I move for the admission of Jessica L. Hanna. She's a member of the bar and she's in good standing with the highest court, also California. I've known her credentials and I'm satisfied that she possesses the necessary qualifications. You know, Jessica, they say that time flies when you're having a lot of fun. And I've come to find out that time really flies when you're working hard. If that's the case, I bet this past year has been a blur for you because of your hard work. And your work ethic is evidenced by the high quality of your work products. I've observed that you've earned the respect of your fellow clerks on the federal circuit. And that's a testament not only of your legal prowess, but also of what I've come to find and enjoy of your professional character. I wish you the best of luck. And I know that here we have a practitioner, an attorney, a woman that is an excellent lawyer and that will become a leading light in the USIP bar. We're going to miss you. Well, it's kind of hard not to grant the motion now, isn't it? We, Judge Shull and I, have no problems with the motion. It is granted. Jessica, please stand up and turn towards the clerk of our court who will swear you in. You solemnly affirm that you report yourself an attorney and counsel at this court, but, frankly, according to law, you consider yourself not to be a United States attorney. Congratulations. Thank you. All right, now on to other business of the day. Our first case this morning is 2014-1292, the United States vs. American Home Assurance Company. Please proceed. Thank you. May it please the Court, my name is Herbert Shelley. I'm here with Mr. Mark Horning. We represent American Home Assurance Company. This is kind of a unique situation in this case in that the principle claimed by the government to be owed by American Home Assurance results from customs activity in liquidating the entries, which was admittedly void and incorrect. The entries were first liquidated mistakenly because American Home was the exporter and importer of these goods that American Home has the bonds for. I was involved in an administrative review at the Commerce Department, which resulted in another party to that review filing an appeal to the Court of International Trade. The preliminary injunction in this case that was issued pertained only to that company, but customs later interpreted it to possibly apply to American Home. The Commerce Department gave liquidation instructions to customs on these entries. Mr. Shelley, the original June 25, 2004 liquidation was valid, correct? That was timely? It was timely at that point. Whether it was correct or not is not the point. It was a timely liquidation, which was protested, and nothing happened with protest while the litigation involving the other company proceeded at the CIT. At the CIT in 2005, the decision was made pertaining to the other company. Customs at that time, through the correspondence they sent to, and then counsel for American Home, indicated that they were not clear whether they had the authority to have issued the initial liquidation instructions. You say the June 3, 2005 re-liquidation had the effect of, put in crude terms, wiping off the books, the June 25, 2004 liquidation. Yes, the 2005 liquidation was invalid, re-liquidation was invalid, because it was issued more than 90 days after the original notice of the determination. The government argues, and I'm wondering what your response is, the government says, isn't that a little bit inconsistent to say that an invalid re-liquidation, which is your position, could have the effect of wiping off the books, a valid liquidation? Although, that is exactly what happened, because when Customs issued the re-liquidation in 2005, Customs voided the original 2004 liquidation and reinstated, and there was, at that point, no valid liquidation involved for the entries because the 2005 liquidation was invalid. Customs dissolved the 2004 liquidation because of the 2005 liquidation, and there was nothing there. The only thing that could happen at that point then is the 2004 liquidation had to have become a deemed liquidation because there is no other valid liquidation of the entries at that point. Now, so you're saying it was a deemed liquidation at 0%? At 0%, because that was the rate declared on the entry of the goods. So did the original liquidation, that occurred within six months of instructions going to Customs to liquidate in the first instance, correct? Yes, Your Honor. Why does that not prevent the deemed liquidation argument? Because the liquidation was never finalized because a protest was filed with Customs challenging the liquidation. And so it was left open. Bills were never sent to the importer to collect the duties that were liquidated in 2004. So it was an open entry at that time. And Customs, after the 2005 re-liquidation, Customs, on its own initiative, dissolved the 2004 liquidation. So at that point, something had to have happened to deal with how the entries should be liquidated and duties collected. Does that mean that the re-liquidation had to avoid the original liquidation? Yes, Your Honor. We believe that the re-liquidation did avoid the original. And Customs, by then sending new bills consistent with the 2005 liquidation, which is at an amount greater than the original 2004 liquidation, imposed a bill based on the 2005 time period, which included additional interest for the year during the litigation. And at that point... Is your argument affected or impacted by the failure of HHS to have filed an appeal following the protest? No, in fact, what the court did, the court tried to resolve the situation, I think, using the precedent involved and the laws involved. Because even the lower court admitted that the re-liquidations were invalid. The judge tried to find a solution to the issue, and the way he did it was determined that because American Home did not appeal the 2005 re-liquidation, that it was still, it had waived its right, and therefore the due re-liquidation amount was valid. We don't believe that's accurate, because in this particular situation, the court said that the pending protest for 2004 had not been denied at the time that the 2004 liquidations were voided by customs. That was done a few weeks later. And so, according to the judge, because the protest was still pending, American Home should have appealed that protest to maintain its rights. I would think that after it was realized that the re-liquidations had been processed by error, that you would have scrambled at that point to file a, before the CIT. Well, we don't believe we had an obligation to protest. The only thing that we could have sued on at that time was the challenge. A lot of times, as you know, the filing before the CIT, that's where you get a new injunction, and most of the, it's often the case that this is done to protect your interests. In this situation, Your Honor, there was no protest pending at the time. The protest, by that time, the 2004 protest had finally been denied. Once that protest was denied, we had no obligation to file a new protest for the 2005 re-liquidations. We had the option, which is what we took, to wait until customs filed a collection action against us and to raise our defenses to the collection action in that action at the CIT, rather than our filing a protest and filing an appeal of the 2005. Do you mind if I ask you to comment on the government's cross-appeal now about why 580 interests should be awarded? No. Go ahead. 580 interests, Your Honor, is a statute, as I'm sure you know, was written and enacted in 1799. It was enacted in the first piece of legislation when the United States was begun because it was the first thing that they needed to do in order to derive revenue to help run the new country. Counselor, you're familiar with the U.S. GSP system, correct? Yes. So if the United States unilaterally lowers tariffs with the GSP country, say Ecuador, are those tariffs general tariffs or are they special tariffs, as you would argue, in the case of an anti-terrorism duty? Well, a GSP tariff gives a benefit to a country because of its developing country status, and I would argue that they are... I mean, they are applied as a tariff, a duty applicable to all imports from that country at an equal rate, but it's not a tariff that remains in effect forever like a normal duty is in effect until Congress changes that duty. And in a GSP situation, the USTR annually or, I won't say annually, but they do reevaluate GSP status. They do that under the authority of Congress. Congress has extended authority to the USTR to handle these type of programs on its behalf, correct? Correct, Your Honor. So my question is, does that not become the general tariff to that particular country? It becomes the duty applicable to those products covered from that country, but it's not a typical tariff, Your Honor, because it's a special benefit given to that country and it is not the duty... What about negotiated rates under trade agreements? For example, even trade liberalization in the WTO? Well, in the WTO, in the negotiations, the respective countries negotiate a deal and agree upon a rate to be applied to whatever product is being negotiated. But that negotiated rate does not become applicable until Congress adopts it and incorporates it into the EU law. So when Congress considers, when the trade package is brought home and now Congress is considering the big tariff schedules that are attached to a trade package, are you arguing that there's no political considerations, there's no special interests or domestic-type considerations involved in Congress deciding the outcome of the package? Your Honor, I've been through that process and I know that there are all kinds of inputs that come into it, but once Congress has taken into account all of the input that it believes appropriate and passes a piece of legislation that incorporates the final number for each of these components, that becomes the duty. So I guess you would agree then that even what we would call a general tariff or a general duty under the MSN rate, as we know it now, that they come inherent with political concerns, such as protection of particular industries or products? They may or may not, Your Honor, depending on how the particular industry or whoever was interested in a particular product... I say that because your argument is that back in 1799, when the tariffs were originally adopted, that they were adopted primarily to raise revenue for the country and that they did not have attached to them any type of consideration, let's call it domestic protection considerations. I don't argue that they did not have any protectionist impact. We do argue, though, and I believe it's substantiated, that the primary consideration at that time was the collection of revenue. So whenever Congress wants to protect an interest, it can do so by raising the general tariff. That will happen, yes, Your Honor, but that is very different from the situation of an anti-dumping duty, which does not fall into that category and did not exist in 1799 or even in the next 100 years, more than 100 years after that. So at that time, only regular duties could have been considered and anti-dumping duties, which this Court has found to be special duties that are unique and different from regular duties, is what is at issue here. Mr. Shelley, you're well into your rebuttal time. We'll restore the full amount if you are satisfied with this so far. Sure. Okay, very good. Mr. Kenney? May it please the Court, Edward Kenney from the Department of Justice and with me is Brandon Rogers from U.S. Customs and Border Protection. Your Honors, as Mr. Shelley has agreed, the 2004 liquidations were timely liquidations. I'd like to... I'm sorry, I jumped in, but time is fleeting. I'd like to sort of pick up on what we were discussing. The presiding judge and Judge Reyna were discussing with Mr. Shelley about the 580 tariff issue, the interest issue. I'm sorry, 580 interest. Let's assume that the government was in a position and as a matter of law or policy, whatever, it could have one of these interests but not both. Which would it prefer and why? In other words, if the government had to live with just 580 interest or just equitable interest in these sorts of cases, which would it prefer and why? I realize you say you're entitled to both, but just in response to my question, what would you pick? Your Honor, I don't think I'm prepared to answer on behalf of the government whether one is more favorable or the other to the government. Well, just a matter of policy, which in other words, if there could only be one based on what you know of the law and so forth and the policy, what would the government prefer? Your Honor, I would have to say that... Wouldn't it almost vary in individual cases, for example? I believe it would because if there's still money under the bond, if the bond hasn't been exhausted, there would be 1505D interest accruing and then the government would be seeking, if it's a recalcitrant surety where the government had to sue that surety to collect, we would be seeking 580 interest because that is obligations due under a bond for duties. In this situation, the bond was subsumed by duties alone. So right at the start, that bond was used up by duties. So in this case, we're seeking equitable interest for the time value of money to return the parties back to the position when the obligation was originally incurred. Yes, but if you were to get 580 interest, it would also serve to do that. To an extent, it could do that, yes. So here's, I guess, my thinking. Equitable interest is an equitable determination by the judge. It does not have to be awarded. It usually is awarded, but it is to restore time value of money. Suppose you were in a scenario where inflation was at such a rate that nobody's earning more than, say, 2% return on their investments over time. The government comes along and collects 580 interest at 6% return. Is there still a need to compensate the government and or domestic industry, whoever? Is there still a need to compensate for loss of time value of money if you just earned a 6% interest rate? Well, yes, Your Honor, because there are two different tracks. There's 580 interest is to... Equitable interest is a compound type interest. It's just the same formula as 580 interest. It's based on the T-bill rate. It's compounded just like any other type of time value of money type interest. 580 interest is, as you said, Your Honor, 6% per annum. And the reasoning that there's a difference here is because 580 interest is supposed to prompt the sureties. It's supposed to... It's a penalty type interest to get the sureties to comply with their obligations, whereas equitable interest is just to put the parties back in the same position. You haven't answered my question at all, and you know that because you've just skirted around giving the purpose behind the various forms of interest. Fine. If 580 interest was enacted in order to encourage prompt payment of bonds, I can have no problem with that. Can't it simultaneously serve the purpose of ensuring that the government also gets the time value of its money in certain situations? Now, there may be situations where interest rates are such that the time value of money really ought to be calculated more at an 8% rate. Ah, well, maybe that opens the door to the need to supplement 580 interest with equitable interest. But that is very much at the trial court's decision-making, it seems to me. But what I'm not understanding is why the government thinks it's going to double dip on interest. Your Honor, I would agree that, as you said, depending on the time and the economics of the prevailing periods of time, 6% might not compensate the government. 6% might compensate the government if you're evaluating it on a time value of money type issue. And isn't that what the court does when it's assessing equitable interest? Exactly. Yes. So why, if we were to agree with you that the government was entitled to 580 interest, what you've argued in your brief is, ah, yes, but don't touch the equitable interest. Give us both. Isn't the only logical thing to do, if we agree with you on your 580 interest argument, to vacate and remand the finding of equitable interest for the district court to reassess the need for equitable interest in light of the receipt of the 580 interest, understanding the purpose for which equitable interest is supposed to serve? I would respectfully disagree. And I do so because the equitable interest is serving to put the parties back into their same position, and 580 interest is serving the other reasoning, which is to ensure that securities pay their obligations. And you don't think that the 580 interest also satisfies the need to ensure that the government has the time value of money? Depending on the economics of the situation, maybe not. However, Your Honor, in a situation where perhaps, in a situation where 6% does just meet the time value of money element, the parties would just be back in the same position as they were. There would be no element of what the government's position is on 580 that is a punitive type of interest to when the government has to sue, has to sue on collection under an obligation that the bond has always said that, you know, pay upon demand. There's no real downside for the surety to not pay the government on its demand if they're only going to be in the same position had they invested the money. If they didn't pay back in this situation in 2005 and they paid in 2015, and it's just time value of money, they're really not at a loss. That's why 580 is, and it's phrased the way it is, in that upon all bonds on which suits are brought for the recovery of duties, interest shall be allowed. It's only when the government has to come and collect, and this is after all the administrative processes of dunning them and sending demand letters and all of that. Here, finally, they're being called to task, the sureties are being called to task for ignoring the government. Otherwise, there'd be no downside. Ken, let me ask you, you're saying the 580 in those situations is an automatic interest, there's no equitable considerations? Once the government has to sue for collection, yes. Now, what are we to make, then, of the language in the Great American Insurance case, recent decision in 2013, where there's a lengthy discussion there and Judge Toronto states that there's an equitable component to the 580. I think he says, assuming the 580 interest is available as a matter of law, there's an equitable consideration that comes into play to determining whether, in fact, it can be recovered. What is the government's position on that? Because I don't think either side has discussed that aspect of the 580 interest. No, Your Honor. In the Great American case, this court, and for the reasons it stated, there are procedural deficiencies in order for this court to get to those types of interest. That's true, but I think one of the reasons, it seemed to me, and correct me if you think I'm wrong, but it seemed to me in reading the decision that Judge Toronto was saying, look, the reason we're affirming the decision of the CIT not to get to the 580 issue, not to allow the government to present it was that there's a factual, equitable component, and that wasn't brought out in time. So in other words, Judge Toronto was saying, we're affirming the decision of the CIT not to hear this because the CIT was correct in that there was factual development of an equitable nature. So it seems to be, Judge Toronto seems to be saying in Great American that there's an equitable component in the 580 calculus. Now, do you agree or disagree with that? Well, Your Honor, I do understand that, recognize that. To the same extent, and we also have the case that... No, I'm saying do you agree or disagree. I mean, first of all, do you agree that Judge Toronto says there's an equitable component? Yes. Okay, now, that's point one. Point two, do you think that's correct or incorrect? I realize that because it's a decision that we have to follow. I agree, Your Honor. However, to the extent that it wasn't the basis of that holding in that case, the basis of the holding in the case was that there was procedural deficiencies. Yeah, but you said the... No, you're correct. No question about it. It was procedural deficiency, but the basis, as I read it, for our court to affirm the CIT's decision on that procedural deficiency was the finding that there was an equitable component in 580 interest. So, I mean, for that reason, I'm not sure. I don't think, at least I have difficulty seeing how those statements in there were dicta. Your Honor, we also have the other, the TASC, the Federal Circuit's case, federal insurance, and we also have... But that wasn't an anti-dumping case. It was not an anti-dumping case, exactly. So, I mean, in general, Great Americans speak specifically to 580 insurance in the anti-dumping setting. It does, Your Honor. However, if I could explain, the federal insurance case deals directly with 580 interest and goes to the decision on 580 interest. And in deciding that case, it's just deciding that this situation, this law applied. Let me ask you this. If we were to agree with the government, what would your position be if a decision came down from this panel saying we agree with the government that as a matter of law, 580 interest is not barred, but citing to Great American Insurance, there has to be some determination in the district court as to the equitable component of 580 interest. So we would say as a matter of law, it's not barred, but the district... I'm sorry, but the CIT has to decide in the first instance whether the equities favor it, citing Great American. Well, I would say also that there's a... What would be that sort of an approach? I would respectfully disagree with that to the extent that even if there is an equitable component, just like there is a case law discussing there's an equitable component to equitable interest, but that component in the realm of time value of money is just the fact that there was demand, that demand went unsatisfied, and that's the equitable consideration there. It's the same... If the court is going to proceed under that matter, there's the same equitable elements of there was a demand, an obligation under a bond and a demand, and that demand was not paid. So I would respectfully submit that that would be the equitable... You're saying that in this case, to the extent there's an equitable component in the 580 calculus, it's already been addressed by the analysis that took place with respect to pure equitable interest? Correct, Your Honor. So you would say in this case, it's not necessary? Correct, Your Honor. I have two questions. My lack of knowledge about how this process works entirely. Number one, is the government going to keep this money or are they going to give it to the domestic industries? I mean, to the extent that there is interest related to time value of money and that the dumping harmed the domestic industries and that the surety at $600,000 wasn't enough to cover that harm, do they get the interest or is the government going to keep the interest? We're in a situation where there's never been an equitable interest awarded by the court. So there's no... The situation hasn't arisen yet. However, the statute does say that interest earned in the CDSOA, interest earned on anti-dumping duties will be distributed. So I think that's the... Likely outcome. ...scenario where that will be evaluated. Whether 580 interest is interest earned on anti-dumping duties might be a different situation. But we don't know yet. We don't know yet. Okay, and so I have one last question, which is, is all of this only relevant to the period from 1999 to 2006? The Byrd Amendment? Yeah, but it's a different... I mean, 580 is going to apply, obviously, to any time period. But what I mean is this all of the arguments about putting the money in a special fund for distribution, not an interest-bearing account, that's only that limited window of time, right? Exactly, Your Honor. It's only... That subset of that argument is only applicable during that period of time. So what happens now? I mean, you know, I realize that this universe is in that Byrd Amendment time, but now... These are stupid process questions, sorry. But now, is it the case that when the government collects anti-dumping duties, it holds them in the General Treasury for later distribution to qualified domestic industries who've been harmed by the anti-dumping? You're talking about within the CBSOA period? Now? Now. If the entries don't come under the CBSOA, it goes into... The revenue goes into the General Treasury. Goes into the General Treasury, so it's never... So I guess, do the domestic industries now not get compensation ever when they're harmed? Okay, so I know these are stupid questions. I said I don't really fully get it. I'm just curious. So under... My understanding is the time period that we're talking about, the money collected by the government is then divided up among domestic industries who file the correct paperwork... I'm going to give you a rebuttal time. Don't worry. But domestic industry who were harmed by the anti-dumping of the importer, right? Isn't that what happens... During this time period. So I guess post-2006, I'm wondering, do the domestic industries now no longer get any sort of remuneration when they're harmed by an importer? Not under these... That's correct. It goes into the General Treasury. That was the way it was prior to the CBSOA. I know, I know. I know it was that way prior, but I just didn't know what happened post-Byrd Amendment in 2006 on. So from 2006 on, the government just keeps the anti-dumping duties, and the domestic industries get no remuneration for the harm that they've... One second here, Governor. My consultant might cancel for one second. Exactly, Your Honor. Okay, good. No, that's... I'm sorry. The reason that the Byrd Amendment process comes into play here is the argument, again, that these are special duties, correct? Here's my question to you. So our case of Wheatland Tube and Apex Exports, they're being argued as cases that go against your position. How do you respond to that argument? Like Wheatland Tube, they're trying to come up with an analysis or figuring out a margin. They're not talking about interest to be applied to a recovery here. So when they're... I think it was a countervailing duty in Wheatland Tube. When they were trying to figure out the formula, they were wondering whether they should include, because you had to include one of the criteria was import duties, whether they should include anti-dumping duties and... or just regular customs duties. And for that scenario of figuring it out... Yeah, I understand that part. So it's a different scenario. How does this affect your argument? I think we're apples and oranges here with that. How? Because here we're talking about applying interest to a... We're at the stage of collections. Collections of duties. And the anti-dumping duties are another form of duties, just like other general duties that need to be collected. There's no reason to create a dichotomy of some regular customs duties. We're really going to try and use all laws to recover, yet anti-dumping duties, we would not do that. There would be... The surety would then be at a position to say, well, let's put the anti-dumping duty... We'll put that all off and pay that later. Forget about the surety right now. What's your position on our anti-dumping duties? Are they to be treated as general customs duties for purposes of 580? Yes, to the extent that 580 talks about duties in general. It talks about all duties is our position, so yes. Okay, I want to be able to restore your rebuttal time, so we're five full minutes over. So we're going to add to Mr. Shelley's time to the extent he needs it. Now, let's let him have his rebuttal. Did you ask for two minutes of rebuttal? Is that what you had asked for? I had asked for three. Three? Okay, we'll see. Yes. We'll see how it goes. Okay, Mr. Shelley. Thank you, Your Honor. I'd like to do the CDSOA question. First, a comment Mr. Kinney made about interest being included in CDSOA monies that go into the special accounts. The only interest that could be included would be 1677G interest collected from an importer for an underpayment of duty, and so if customs did collect, because the declaration of the amount of duty was too small, the importer didn't pay enough money, that interest would be included in going to the special account, and all of that total amount would then be distributed to an affected domestic producer. So now is it true that the domestic producers don't get anything? When the law was repealed, domestic producers can continue to obtain distributions of funds that were collected prior to October 2007. Yes. For current and anti-dumping duties being collected going forward from October 1, 2007, they do not. Now the system is back to the way it was prior to the CDSOA. So it goes down to the general treasury, and then you question whether equitable interest should be payable, and in this situation, the trial court's decision of why equitable interest is payable is to give full compensation to the government for the lack of use of these funds during this period of disagreement about who owes who what. It's not the case, though, for these particular entries, because the government will not get any interest at all, because it does not get the funds that are collected during the CDSOA period of time, and there cannot be any interest. But that was why I asked the government's lawyer who was going to keep the interest. There won't be any interest. Well, under the current rule, there is interest. So if equitable interest is warranted, the government, the answer to his question was, as far as I understand it, it sounds as though equitable interest would flow to the domestic industry who are the harmed party who did lose the money through the time value of money. If, in fact, the equitables were awarded to a particular entry and they were then put into a special account because it is part of the total anti-dumping duties collected for this product that's subject to the CDSOA, the affected domestic producer will get the total amount of money, which would, in that situation, include the anti-dumping duties collected plus the equitable interest applicable to it, because it would, in this situation, cover the surety who didn't pay. But to be clear, outside of the CDSOA context, this interest would not go to domestic producers? No. Outside of that, all of the money would go to the treasury, the anti-dumping duties collected plus any equitable interest. And before the Burt Amendment, there were no distributions that were made to any of the domestic partners? No. Not at all. Not at all. That was the only situation. So let me ask you, on the 580 interest, how do you read Great American Insurance? It does say that there's an equitable component in the determination of 580 interest. Do you agree with that? Yes. Okay. So if we were to say that, as a matter of law, the recovery of 580 interest is not barred, but there has to be a determination of the equitable considerations that are relevant, what would you say would be those equitable considerations? Well, I think the equitable considerations for 580 would be much more minor, if you can say that, than a typical equitable interest, because 580 interest is statutory interest. It's not equitable interest. It's set by the statute. The amount of interest to be applied is set by the statute, and it's set on what duties it's supposed to apply, which gets to the question of dumping duties. Are they part of duties in the 580, which we obviously agree are included in the 580. So I think it's a statutory interest versus equitable interest situation. I think there are equitable principles that a trial court might consider involving whether to award 580 interest, but I think they're very different from the equitable interest that they should have considered in determining whether to award actual equitable interest under their powers to grant additional compensation. Okay. Thank you. Okay. Anything further, Mr. Shelley? Yeah. Thank you. Okay. Thank you. Mr. Kenney, you may use two minutes of rebuttal, only limited to, of course, your cross-appeal. Yes, Your Honor. I do agree with Mr. Shelley and what he was saying about the 580 interest being statutory interest and to that extent. So to the extent that you wrongly answered Judge Shull's questions in your initial presentation when you agreed with him that it was equitable rather than statutory, you're now changing in rebuttal your position, or did you sort of not realize you were giving that away earlier? Your Honor, I did not realize I was giving that away. However, it is obviously a statutory element. Maybe you didn't understand where the questions were leading, that, you know, is it equitable, a la does the lower court have the freedom to disregard it and not award it? Right. And your view is precisely what now? That if it's applicable, it's mandatory to apply, as in the federal insurance case. So there's no discretion. The court has to award it. Yes. What happens then with what's said in the Judge Toronto's case? I believe that in the Great American case, it was decided, as I stated before, it was decided on the procedural grounds. Right, but he talks about the equitable component. Mr. Shelley says, when I asked him about that Great American case, his response was, as I understood it, that yes, that's what Great American says, there is an equitable component, but it's, maybe I'm misusing his words, minor equitable considerations compared to the broader equitable considerations that apply in the case of equitable insurance per se. Do you understand that? Equitable interest. Yes, Your Honor. There are some little equities in the 580 calculus in line with Great American, but they're nothing compared to the big equities that come into play in equitable insurance. If I'm understanding it, I think I agree with Mr. Shelley, because the small equity would be just the fact that it was demanded, we've had to sue, it was demanded, and it was not complied with. Is it possible that you would read Judge Toronto's language, and I'm actually going to read you the sentence so that you don't have to try and do it from memory, but he says, and I believe this is the sentence that Judge Schall's questions are focusing on, the characterization leaves, rather than disposes of questions, about whether 580 applies to anti-dumping duties at all, and whether, if so, case-specific equitable considerations are relevant to its application, as is common under other variously worded authorizations to apply penalties. Would it be the government's position that I should interpret this sentence as especially with the whether-if-so language by Judge Toronto, that he wasn't saying equitable considerations were necessarily applied, but rather leaving open the possibility that when another court looked into 580, they could conclude it was either statutory and mandatory or maybe had equitable, in fact, footnote 2, which is attached to that sentence, and when you read all the cases he cites, in every one of them those statutes only allowed for the assessment of those penalties if a determination of willfulness was, for example, rendered. Things like that, intentionality, malice, all of the statutes he cites were quite a bit different from this one. So is it your view that maybe he wasn't being definitive but was rather opening the door for another court to consider what it should be? Exactly, Your Honor. Exactly. It wasn't... When I was discussing that, it's really the Great American case was decided on the procedural issue, and the rest of it was left open, and what we're guided by is federal insurance. Okay, thank you. That concludes our proceeding in this case. The case is taken under submission. I thank both counsel. The argument was very helpful. Our next case today...